1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:24-cr-20264-BB All Defendants


UNITED STATES OF AMERICA,

      Plaintiff,                    August 20, 2024
                                     12:45 p.m.
      vs.

TSVIA KOL,
JIMMY SANCHEZ,

      Defendants.               Pages 1 THROUGH 15
_____

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE BETH BLOOM
UNITED STATES DISTRICT JUDGE


Appearances:

FOR THE GOVERNMENT:  UNITED STATES ATTORNEY'S OFFICE
                    YARA DODIN, AUSA
                    99 Northeast 4th Street, 7th Floor
                    Miami, Florida 33133


FOR DEFENDANT        SCOTT W. SAKIN, PA
TSVIA KOL:          SCOTT W. SAKIN, ESQ.
                    2883 Executive Park Drive, Suite 200
                    Weston, Florida 33331-3662

                    WALK FREE LAW
                    ALANA S. YAKOVLEV, ESQ.
                    2801 Greene Street, Suites 7-9
                    Hollywood, Florida 33020

                    ROBERT D. MALOVE, PA
                    ROBERT D. MALOVE, ESQ.
                    200 Southeast 9th Street
                    Fort Lauderdale, Florida 33316

APPEARANCES CONTINUED:


FOR DEFENDANT         FEDERAL PUBLIC DEFENDER'S OFFICE
JIMMY SANCHEZ:        ERIC M. COHEN, FPD
                      ABIGAIL E. BECKER, FPD
                      150 West Flagler Street, Suite 1700
                      Miami, Florida 33130-1556


COURT REPORTER:       Yvette Hernandez
                      U.S. District Court
                      400 North Miami Avenue, Room 10-2
                      Miami, Florida 33128
                      yvette_hernandez@flsd.uscourts.gov

(Call to order of the Court, 12:45 p.m.)

THE COURT:  Go ahead and have a seat.

Thank you.

Just give me a moment to get into the computer.

(Pause in proceedings.)

COURTROOM DEPUTY:  Calling Criminal Case Number 24-20264, United States of America v. Tsvia Kol and United States of America v. Jimmy Sanchez.

Counsel, please state your appearances for the record.

MS. DODIN:  Good afternoon, Your Honor.  Yara Dodin on behalf of the United States.

THE COURT:  Hi.  Good afternoon.

MR. SAKIN:  Judge, good afternoon.  Scott Sakin, Robert Malove, and Alana Yakovlev on behalf of Tsvia Kol, who's present here in court.

THE COURT:  All right.  Good afternoon.

MR. COHEN:  Good afternoon, Your Honor.  Eric Cohen and Abigail Becker, from the Federal Defender's Office, on behalf of Mr. Sanchez, who is also present.

THE COURT:  All right.  Good afternoon to each of you as well.

And Mr. Cohen, I know that you made an appearance in Mr. Sanchez's case.  I just want to ensure that you are serving in the capacity of learned counsel.  Is that correct?

MR. COHEN:  Yes, Your Honor.

THE COURT:  All right.  Thank you, sir.

I appreciate the parties' request to use this opportunity as a status conference because there are some items to discuss, as well as some deadlines for the Court to impose. So I'd like to hear from the attorneys with regard to an anticipated schedule.

Before the Court, just for purposes of the record, is a joint motion for a continuance, which I believe is appropriate, but I would like to learn from each of you the anticipated schedule for purposes of -- Ms. Dodin, for the Government to make a decision, and before that for counsel to provide information.

MS. DODIN:  Yes, Your Honor.

So I can tell Your Honor that almost all discovery has been shared with Defense counsel.  I think that there's a couple of things outstanding.  There's a phone dump for Mr. Sanchez that we recently were able to extract, and we're certainly obviously going to turn that over to the parties. And there may be some jail calls for Mr. Sanchez.  I think some of them have been turned over, but I am not sure that all of them have.

Other than that, the discovery has pretty much been turned over to Defense.  Anything, obviously, that we receive as we go, if we do additional subpoenas, et cetera, would be, of course, turned over to them.  But the bulk of the discovery

has already been turned over.

I did speak with Mr. Sakin.  I don't know -- I can't speak for the other attorneys.  But I do know there's obviously probably an intention by both parties to provide mitigation.  As I explained to Mr. Sakin, and I'm now saying to the Court, if my office does do this on an expedited review, of course, I will let them know, I will let the Court know, so that we could schedule it some time sooner than whatever Your Honor sets it for now.  But as of right now, I know that Defense counsel, at least Mr. Sakin, would like to gather mitigation to provide to the Government as it's making an assessment for death penalty review and for us to be able to go through that process.

Of course, I'm very open to whatever Defense and the Court feels that they need, or that Defense needs, to be able to provide the information they would like to provide.  So I don't have a particular strong feeling one way or another on the timeline there.  So I think it would be by and large, at least at this juncture, based on what Defense counsel would like.  And then if it does get to a point where it's going to be an expedited review, I'll let all the parties know, because, of course, that will move the timeline up.

THE COURT:  All right.  Perhaps we'll turn to Mr. Sakin, and then, of course, Mr. Cohen, with regard to items that you may need for purposes of any type of a mitigation packet.

MR. SAKIN:  Of course, Judge.  Good afternoon.

On behalf of Ms. Kol, we're in a position right now where I was newly appointed to the case a little over a week ago by the Court as learned counsel.  Since that time, I've been able to speak to the client on several occasions, and also to her mother, to get background information concerning where she grew up, where the family's located at, about siblings, about stepsister, stepbrothers, all the things we normally do -- drug history, trauma, and all that.

Based on my initial -- very initial review of speaking to the persons thus far, I would be requesting a period of about eight months in order to complete this.  The reason why is we have to get documents from various sources.  Some of the sources are here in the United States, but some are in Israel.  My client's an Israeli citizen.  She lived there as recently as 2019.  She had a serious drug issue, which, of course, will fit into the mitigation aspect of the case.

She has suffered from various traumas, I've learned from the family.  We have to get the records -- medical records, various records regarding background information, school records, the whole plethora of records, which, unfortunately, can often take a period of time, especially in light of the fact that she's 35 -- 36 years old, and some of the records go back quite a ways.

And you know, we really start off from the beginning

of time on these cases and we work from very early on.  I'm lucky I have a cooperative family, who is cooperating with me and giving me information, but there are many other people out that we need to seek out.

I did file today ex parte -- you're shaking your head.

THE COURT:  Yeah.  I've reviewed it and I believe it's appropriate.  And I do want to advise you that I have a phone conference scheduled with Mr. Dash.

MR. SAKIN:  Of course.  And I did work with Mr. Dash, as I have in prior cases, to put something together for the Court.  And it's a preliminary -- very preliminary right now, because we have to kind of see what develops and what's necessary.  So that will get us started.  We've already started anyway, but we wanted to make sure that we work on this as expeditiously as possible.

We're well aware of the rules, so if the Government does seek an expedited release from the Justice Department, and we're advised accordingly what the result is, so be it.  They seem to be taking a long time on other cases.  So we're going to forge ahead and do what we have to do in order so the Government does not certify death in this case.

So I would be asking for a minimum of eight months.  I'm not asking for more because I really need the eight.  And obviously if something were to change I would come before the Court and let you know.  But yes, that's where we stand with

the case right now in terms of our mitigation preparation.  And the other attorneys are working on more of the guilt part of the case right now.

THE COURT:  All right.  And Mr. Sakin, are you raising the issue of competency with regard to Ms. Kol?

MR. SAKIN:  Competency?

THE COURT:  Yes, sir.

MR. SAKIN:  No.

THE COURT:  All right, then.  Thank you.

And Mr. Cohen?

MR. COHEN:  Your Honor, I agree with much of what Mr. Sakin says, but I think he might be being overly optimistic about the time that we would need for everything.  He says first we have to get that information.  Our client was born and raised in Southern California.  His family's all there, so we do not have as readily contact with them as we would like, although we have been communicating by phone.  We would be asking for 10 months to submit mitigation submission to the Government.

As the Court may remember -- and I have an order, if the Court wants to refresh its memory --

THE COURT:  I'm certain that you're referring to Mr. Santiago Ruiz's case.

MR. COHEN:  I am, Your Honor.  And then, subsequently, in a case before Judge Altman he also allowed us 10 months to

submit a mitigation package.  So it's certainly nothing out of the ordinary in this district and throughout the country for a 10-month grant for that purpose.

THE COURT:  All right.  And Mr. Cohen, are you or Ms. Becker raising the issue of Mr. Sanchez's competency?

MR. COHEN:  No, ma'am.

THE COURT:  All right.  Thank you.

All right.  Given the 10 months that you're requesting, that would take us to June of 2025.  And I understand, Ms. Dodin, that you anticipate that there would be an expedited review, but in realistic terms when do you believe that the United States would make a decision as to whether the offense is such that death is justified or that the Government will make another decision based on the information that's been provided?

MS. DODIN:  Judge, it's a little difficult to give a timeline, just because, of course, as Your Honor knows, that it doesn't just go through my office.  It has to also go through capital review with DC.

In my conversations with them, the timelines that they have articulated to me don't really seem like that's what's happening with other cases, as Mr. Sakin pointed out.  You know, the conversations I've had with them is that they said it could take a month to two months, but that's not really what I'm seeing that's happening with other cases.

I mean, I think -- and of course I can't promise this, but I think that I'd try to be as efficient as possible.  And I think I could probably try to do it within six months.  And of course, if it was less than that I would definitely tell the Court and Defense counsel because I certainly don't feel that the case needs to get pushed out to June 2025 if we can have a resolution before then that involves expedited review for the death penalty.

So I would like to say around six months, me talking to my office, going through my office, going through capital review.  I know sometimes they have questions and revisions before they come to a decision.  I also don't know, quite frankly, the impact of any potential administration change -- what that might have on it.  So that's kind of the best answer I could give to the Court at this juncture.

THE COURT:  So you believe six months following the submission of the information from each Defendant?

MS. DODIN:  No, Judge.  So if it's not going to be expedited review, if we're going to wait for the mitigation from Defense counsel, what I'm told by capital review is that it should take one to two months.  That's what I'm told by them.

THE COURT:  All right.  I'd like to put some deadlines in place, but I'd like them to be realistic.

So for purposes of the Defendants providing what I

will call a mitigation packet or information to the United States for its consideration, I believe that the 10 months is certainly reasonable, and that would take us to approximately June 20th of 2025.  And then it would appear that the Government would then have at least a two-month period in which to review the matters and make a decision.

And I believe that the US Attorney's Office should be able to file with the Court a Notice of Intent to Seek the Death Penalty not much longer after that.  And to the extent that there is an expedited review, and the United States makes another decision, then you can certainly advise the Court by way of a written filing or a request for a status conference.

So I believe that it would be appropriate that -- given the time that you're requesting, that perhaps by September 5th, if not before, then the United States should be able to make a decision.

Is that an acceptable timeline?

MS. DODIN:  Yes, Your Honor.

MR. SAKIN:  Yes.

MR. COHEN:  Yes, Your Honor, on behalf of Mr. Sanchez.

THE COURT:  And then the Court would certainly set a calendar call and a trial date not long after the September 5th.  And it would appear that that would take us -- if we were to look at the next calendar call, that would be a calendar call of September 16th, with the trial commencing on

12

the 22nd. And we can certainly move that timeline up, given the decisions.

Mr. Cohen?

MR. COHEN: Your Honor, we have no objection to that, as we'll be working on both phases of the case at the same time. But if there is a Notice of Intent to Seek, we'll need additional time before trial.

THE COURT: Of course. And I'm giving a timeline that obviously is not set in stone, and it certainly can be flexible depending upon the circumstances.

MR. COHEN: Understood, Your Honor. I just wanted to make it clear on the record.

THE COURT: Of course. So certainly the Joint Motion for a Continuance is granted. Certainly, by the filing, the Defendants waive speedy trial; is that correct, on the record, Ms. Kol and Mr. Sanchez?

MR. SAKIN: Yes. We discussed with our client -- I believe there's a previous waiver of speedy trial in the file. If not, we waive speedy trial again on behalf of Ms. Kol.

THE COURT: But the speedy trial period is waived for this amount of time that you're requesting; is that correct, Mr. Sakin?

MR. SAKIN: Yes.

THE COURT: And Mr. Cohen?

MR. COHEN: Also on behalf of Mr. Sanchez.

THE COURT: All right. The interests of justice served by a continuance outweigh any interests of the public or these Defendants in a speedy trial, and as a result the period of delay resulting from the continuance from the date that the motion was filed up until the date the trial commences is excludable under the Speedy Trial Act.

What other items may we discuss at this time?

Ms. Dodin has stated that other than items from a phone that all discovery has been turned over. Are there issues that the Court needs to address with regard to discovery, Mr. Cohen or Mr. Sakin?

MR. COHEN: Your Honor, we believe that there are some outstanding discovery -- nothing significant. There has been a good deal of discovery provided. And we could take that up with counsel, and if we're not able to get a resolution we can bring it before the Court at that time.

MR. SAKIN: Right. Exactly. I don't believe we need any court intervention right now regarding discovery. If there are discovery issues, we'll address it with the Government first. And then, if we can't resolve it, we'll bring to the Court's attention in a pleading.

THE COURT: All right, then.

Ms. Dodin, are there any issues that the Court can consider on behalf of the Government?

MS. DODIN: No, Your Honor. Thank you.

THE COURT:  Okay.  All right.  Then I will certainly docket the order that the Court has signed, based on the motion that was filed with regard to the seed money that is being requested.  As well, I will enter an order that sets forth these deadlines, as well as the calendar call and the trial date.

MR. SAKIN:  Very well.

MS. DODIN:  Thank you, Your Honor.

MR. SAKIN:  Thank you.

THE COURT:  All right, then.  Have a good afternoon.

MS. DODIN:  You too.

(Proceedings concluded at 1:02 p.m.)

UNITED STATES OF AMERICA        )

ss:

SOUTHERN DISTRICT OF FLORIDA  )

C E R T I F I C A T E

I, Yvette Hernandez, Certified Shorthand Reporter in and for the United States District Court for the Southern District of Florida, do hereby certify that I was present at, and reported in machine shorthand, the proceedings had the 20th day of August, 2024, in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that this transcript contains pages 1 - 15.

IN WITNESS WHEREOF, I have hereunto set my hand at Miami, Florida, this 24th day of March, 2025.


/s/Yvette Hernandez
Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
400 North Miami Avenue, 10-2
Miami, Florida 33128
(305) 523-5698
yvette_hernandez@flsd.uscourts.gov