IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:24-cr-20264-BB-2

UNITED STATES OF AMERICA,

       Plaintiff,                         January 31, 2026
                                     9:29 a.m.
    vs.

JIMMY SANCHEZ,

       Defendant.                   Pages 1 THROUGH 32
_____


TRANSCRIPT OF PLEA COLLOQUY
BEFORE THE HONORABLE BETH BLOOM
UNITED STATES DISTRICT JUDGE


Appearances:

FOR THE GOVERNMENT: UNITED STATES ATTORNEY'S OFFICE
                       MONIQUE BOTERO, AUSA
                       JESSICA A. MASSEY, AUSA
                       JACOB H. KOFFSKY, AUSA
                       11200 Northwest 20th Street, Suite 101
                       Miami, Florida 33172


FOR THE DEFENDANT:  FEDERAL PUBLIC DEFENDER'S OFFICE
                       ERIC MARTIN COHEN, AFPD
                       ABIGAIL E. BECKER, AFPD
                       CHRISTIAN S. DUNHAM, AFPD
                       ASHLEY KAY, AFPD
                       150 West Flagler Street, Suite 1700
                       Miami, Florida 33130-1556


COURT REPORTER:     Yvette Hernandez
                       U.S. District Court
                       400 North Miami Avenue, Room 10-2
                       Miami, Florida 33128
                       yvette_hernandez@flsd.uscourts.gov

2

(Call to order of the Court, 9:29 a.m.)

THE COURT:  Mr. Cohen, did you have enough time to speak with your client?

MR. COHEN:  Yes.  Thank you for that, Your Honor.

THE COURT:  Of course.  All right.  Let's go ahead and call the case and we can get started.

COURTROOM DEPUTY:  Calling Case Number 24, Criminal, 20264, United States of America v. Jimmy Sanchez.

Counsel, please state your appearances, beginning with the Government.

MS. BOTERO:  Good morning, Your Honor.  Monique Botero, Jessica Massey, and Jacob Koffsky on behalf of the United States of America.

THE COURT:  Good morning.

MS. BOTERO:  And, Your Honor, Mr. Koffsky has a ten o'clock in front of Judge Williams, so he may be leaving before the hearing is over.

THE COURT:  Yes.  Of course.  I understand.

MR. KOFFSKY:  I apologize about that, Your Honor.

MR. COHEN:  Good morning, Your Honor.  Eric Cohen, Abigail Becker, Christian Dunham, and in the back is Ashley Kay, from the Federal Defender's Office, on behalf of Mr. Sanchez, who is also present.

THE COURT:  Good to see everyone.

Good morning and a Happy New Year.

(Pause in proceedings.)

THE COURT: Good morning, once again, Mr. Sanchez.

THE DEFENDANT: Good morning, Your Honor.

THE COURT: It is my understanding, pursuant to this Plea Agreement, that you are now agreeing to change your pleas to each of the three counts in the Indictment to guilty. That is, you're admitting that you committed each of the offenses; is that correct, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have your attorneys answered all of your questions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Then, Mr. Sanchez, I'm going to ask that you stand. Raise your right hand to be placed under oath.

JIMMY SANCHEZ, DEFENDANT, SWORN

COURTROOM DEPUTY: Thank you.

THE COURT: And you may have a seat, sir.

Do you understand, Mr. Sanchez, that you are now under oath, and if you do answer any of my questions falsely, your answers may later be used against you in a prosecution for perjury for making a false statement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: What is your full name, sir?

THE DEFENDANT: Jimmy Sanchez Bracamontes.

THE COURT:  How old are you?

THE DEFENDANT:  Thirty-seven.

THE COURT:  And how far did you go in school?

THE DEFENDANT:  Tenth grade.

THE COURT:  Are you able to fully read and write in English?

THE DEFENDANT:  Yes.

THE COURT:  Have you ever been diagnosed with or treated for any type of mental illness?

THE DEFENDANT:  No -- yes.

THE COURT:  Let me ask the question again, since you have answered both ways.  Have you ever been diagnosed with or treated for any type of mental illness?

THE DEFENDANT:  Yes.

THE COURT:  When was the diagnosis?

THE DEFENDANT:  2018.

THE COURT:  And what was the diagnosis?

THE DEFENDANT:  For anxiety.

THE COURT:  And what type of treatment have you been receiving since 2018?

THE DEFENDANT:  Pills.  Sertraline, Amitriptyline, Trazodone.

THE COURT:  So three types of medication for the anxiety?

THE DEFENDANT:  Yes.

THE COURT:  Have you been diagnosed with any other mental health condition other than the anxiety?

THE DEFENDANT:  Yes.

MR. COHEN:  May we have a moment, Your Honor?

THE COURT:  Certainly.

(Pause in proceedings.)

THE DEFENDANT:  Oh, yes.  I had a brain injury.

THE COURT:  And when did you suffer the brain injury?

THE DEFENDANT:  2019.

THE COURT:  And did you receive any treatment for the brain injury?

THE DEFENDANT:  Yes.

THE COURT:  What type of treatment?

THE DEFENDANT:  I was in the hospital for a couple days for a blood clot.  And I guess the blood clot -- I don't know if it went away or it just -- I was there in the hospital for that.  And then I had to go see -- had to go to like rehab kind of.

THE COURT:  Did you have any surgery?

THE DEFENDANT:  No.

THE COURT:  And what were the circumstances that led to the brain injury in 2019?

THE DEFENDANT:  A police beating.

THE COURT:  And since 2019, have you been treated for the brain injury, which, as you stated, was a blood clot?

THE DEFENDANT:  No.

THE COURT:  Have you received any type of treatment since 2019 for that brain injury?

THE DEFENDANT:  No.

THE COURT:  Other than the anxiety and the brain injury, are you suffering from any other mental health condition?

THE DEFENDANT:  No.

THE COURT:  Are you suffering from any other type of medical condition?

THE DEFENDANT:  No.

THE COURT:  Are you taking any medication other than the three different medications for your anxiety?

THE DEFENDANT:  No.

THE COURT:  When was the last time you took any of that medication for your anxiety?

THE DEFENDANT:  Last night.

THE COURT:  Do you take it at the same time every day in the night?

THE DEFENDANT:  Yes.

THE COURT:  And for how long a period of time have you been taking that medication?

THE DEFENDANT:  For the last, like -- like six years.

THE COURT:  Is the medication having any effect on your ability to understand what's taking place in the courtroom

right now?

THE DEFENDANT: No.

THE COURT: Has the medication had any effect on your ability to understand the advice that your attorneys have given you throughout these proceedings?

THE DEFENDANT: No.

THE COURT: Has it had any effect on your ability to read and understand the documents that were placed before you, including the charging document, the Factual Proffer, and the Plea Agreement?

THE DEFENDANT: No.

THE COURT: Have any of these medical -- and that would include the mental health conditions -- had any effect on your ability to understand what's taking place in the courtroom, understand the advice by your attorneys, or understand the documents?

THE DEFENDANT: No.

THE COURT: Right now, Mr. Sanchez, are you under the influence of any drugs of any kind or alcoholic beverages of any kind?

THE DEFENDANT: No.

THE COURT: Have you had a full opportunity to discuss the charges in the Indictment and the case in general with your attorneys?

THE DEFENDANT: Yes.

THE COURT:  And have your attorneys answered all of your questions?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you fully satisfied with the counsel, the representation, and the advice that has been given to you in this case by your attorneys, Eric Cohen, Abigail Becker, and Christian Dunham?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, Mr. Sanchez, the Court has before it a Plea Agreement.  This Plea Agreement consists of eight pages. Did you read this completely?

THE DEFENDANT:  Yes.

THE COURT:  Did you understand every word?

THE DEFENDANT:  Yes.

THE COURT:  Did your attorneys answer all of your questions?

THE DEFENDANT:  Yes.

THE COURT:  Is this eight-page Plea Agreement the entire agreement that you have with the United States of America?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are there any other promises or representations the United States of America has made to you?

THE DEFENDANT:  No.

THE COURT:  Has anyone at all forced you or threatened

you to enter into this Plea Agreement?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any promises or assurances to you, other than what's in the Plea Agreement, to persuade you to enter into the Plea Agreement?

THE DEFENDANT:  No.

THE COURT:  Now, pursuant to this Plea Agreement, you agree to plead guilty to the following counts in the Indictment:  Count 1, Conspiracy to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of Title 21, United States Code, Section 846; Count 2, Discharge of a Firearm in Furtherance of a Drug-Trafficking Crime, in violation of Title 18, United States Code, Section 924, Subsection (c); and Count 3, Causing the Death of a Person in the Course of a Violation of United States Code, Section 924, Subsection (c), in violation of Title 18, United States Code, Section 924, Subsection (j).

Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And Mr. Sanchez, do you need me to read each of the allegations in the Indictment or do you fully understand the allegations contained in Counts 1, 2, and 3?

THE DEFENDANT:  I fully understand, Your Honor.

THE COURT:  As to Count 1, Conspiracy to Possess with

Intent to Distribute a Controlled Substance, how do you plead to that charge?

THE DEFENDANT: Guilty.

THE COURT: As to Count 2, Discharge of a Firearm in Furtherance of a Drug-Trafficking Offense, how do you plead to that charge?

THE DEFENDANT: Guilty.

THE COURT: As to Count 3, Causing the Death of a Person in the Course of a Violation of 18, United States Code, Section 924, Subsection (c), how do you plead to that charge?

THE DEFENDANT: Guilty.

THE COURT: Has anyone forced you or threatened you to enter your pleas of guilty to each of these charges?

THE DEFENDANT: No.

THE COURT: Has anyone made any promises or assurances to you, other than what's contained in the Plea Agreement, to persuade you to enter your pleas of guilty to these charges?

THE DEFENDANT: No.

THE COURT: Are you entering your pleas of guilty because you have committed the offenses of Conspiracy to Possess with Intent to Distribute a Controlled Substance, Discharge of a Firearm in Furtherance of a Drug-Trafficking Offense, and Causing the Death of a Person in the Course of a Violation of 18, United States Code, Section 924, Subsection (c), as alleged in the Indictment?

11

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Sanchez, do you understand that, as to Count 1, the Court must impose a minimum term of imprisonment of 10 years, and may impose a statutory maximum term of imprisonment of up to life?

THE DEFENDANT: Yes.

THE COURT: Do you understand that that term of imprisonment will be followed by a term of supervised release of at least five years and can be a term of supervised release of up to life?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that, in addition to the term of imprisonment and supervised release, the Court can impose a fine of up to $10 million?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that, as to Count 2, the Court must impose a term of imprisonment of 10 years consecutive to any other sentence imposed, followed by a term of supervised release of at least five years, and can be a term of supervised release of up to life?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the maximum term of imprisonment as to Count 2 can be life?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that, as to that count,

the Court can impose a fine of up to $250,000?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that, as to Count 3, the Court can impose a statutory maximum term of imprisonment of up to life, followed by a term of supervised release of up to three years and a possible fine of up to $500,000?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand, Mr. Sanchez, that the terms of imprisonment as to each of these counts may run consecutively?  That means one will follow the other.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that, in addition to those penalties, a special assessment of $100 as to each count, for a total of $300, will be imposed upon you to be paid at the time of sentencing?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the Court will order restitution and may order forfeiture?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions regarding the penalties to be imposed?

THE DEFENDANT:  No.

THE COURT:  Do you understand, Mr. Sanchez, that the offenses to which you are pleading guilty are each felony

offenses, and you will be adjudicated guilty of each offense, and those adjudications will deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any type of firearm?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you and your attorneys fully discussed any immigration consequences of your guilty pleas?

THE DEFENDANT:  Yes.

THE COURT:  And have your attorneys answered all of your questions?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand, sir, that if you are not a citizen of the United States, in addition to the other possible penalties you are facing, your pleas of guilty may subject you to deportation, exclusion, or voluntary departure, and prevent you from obtaining United States citizenship?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you and your attorneys fully discussed the advisory sentencing guidelines and how they might apply in this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And have your attorneys answered all of your questions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand, Mr. Sanchez, that I will not be able to determine the advisory guideline range for your case until after the Presentence Investigation Report has been completed, and you and the Government have each had the opportunity to challenge the reported facts and the application of the guidelines that are recommended by the Probation officer, and the sentence that is ultimately imposed may be different from any estimate Mr. Cohen, Ms. Becker, or Mr. Dunham, or anyone else may have given you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand, Mr. Sanchez, that in the federal system parole has been abolished and if you are sentenced to prison you will not be released on parole?

THE DEFENDANT: Yes, Your Honor.

THE COURT: By pleading guilty to each of these charges, you are giving up rights that you do have, such as the right to persist in your pleas of not guilty and to a trial by jury. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At your trial, you would be presumed innocent and the Government would have the sole burden of proving all the elements of each of these offenses beyond and to the exclusion of every reasonable doubt. Do you understand that?

15

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You would have the right to the assistance of counsel, appointed for your defense at trial and every other stage of the proceedings.  You would have the right to see and hear all of the witnesses and to have those witnesses cross-examined on your behalf.  And you would have the right on your own part to decline to testify, unless you voluntarily elected to do so.  And you would have the right to use the subpoena power of this Court to compel witnesses to come into the courtroom and testify on your behalf.

And if, at your trial, you decided that you did not want to testify or you did not want to call any witnesses, those facts could not be used against you.  Do you understand that you do have those rights, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And by pleading guilty to these charges, you are waiving or giving up your right to a trial by jury, as well as all of the rights that are associated with a trial.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions related to the rights that you're giving up?

THE DEFENDANT:  No.

THE COURT:  Ms. Botero, if the Government will set forth the elements with regard to Counts 1, 2, and 3, please.

MS. BOTERO:  Yes, Your Honor.

Starting with Count 1, the elements are, first, that two or more people agreed to try to accomplish a shared and unlawful plan, the object of which was to possess with intent to distribute a controlled substance, as specified in the Indictment.  Second, that the Defendant knew about the unlawful purpose of the plan and voluntarily joined in it.

As to Count 2, the elements are, first, that the Defendant committed the drug-trafficking crime charged in Count 1 of the Indictment; two, that during and in relation to that drug-trafficking crime the Defendant knowingly used or carried a firearm, as charged in the Indictment, or that the Defendant knowingly possessed a firearm in furtherance of that drug-trafficking crime, as charged in the Indictment; and third, the firearm was discharged.

Lastly, Your Honor, the elements of Count 3 are the same as Count 2, with the additional element that during the discharge of the firearm in furtherance of the drug-trafficking crime, a murder, as defined by Title 18, United States Code, Section 1111, was committed.

THE COURT:  Thank you, Ms. Botero.

Mr. Cohen, has Ms. Botero accurately set forth the element as to each of these offenses?

MR. COHEN:  Yes, Your Honor.

THE COURT:  And can you advise the Court what efforts

you have made to discuss those elements with Mr. Sanchez, as well as a full review of the discovery -- that is, the information provided in support of those elements -- and a discussion related to any motions that could have been filed or defenses that could have been raised.

MR. COHEN:  Yes, Your Honor.

Since Mr. Sanchez arrived at FDC in July of 2024, at least one member of the team has seen him weekly.  At the very beginning of the case, our initial focus was on developing mitigation for submission to the Government to seek a waiver of the death penalty.  But during that time period, we also reviewed with Mr. Sanchez the Indictment, what the Government would need to prove to support each count of the Indictment, what evidence we had been provided as part of the Government's discovery obligation that would support those elements, potential legal theories, and possible defenses.

After the no-seek was filed by the Government, we then began -- in addition to all those other issues that we continued to address with Mr. Sanchez, we began focusing on the possibility of a change of plea.  In furtherance of that, we discussed with him the maximum and minimum penalties for each count in the Indictment, how the guidelines were likely to apply in his case -- although we could not tell him with any certainty that they would -- and any possibility of mitigating arguments that we would intend to raise on his behalf.

Mr. Sanchez agreed to plead guilty almost immediately after we began those conversations.

We later reviewed with him the Plea Agreement, the Factual Proffer, the colloquy questions we anticipated the Court would ask, and the elements of the offense.

THE COURT:  All right.  Mr. Cohen, did you, as part of the discovery, receive documents reflecting the weighing and testing of the methamphetamine?

MR. COHEN:  We have, Your Honor.

THE COURT:  And while I understand the Government or the United States has filed a notice that it does not, and did not, intend to seek the death penalty, with regard to the mitigation that was provided to the United States, is there anything within the mitigation packet, or based on your review of any of the medical records, that would support any claim that Mr. Sanchez is incompetent or otherwise his mental competency is in question?

MR. COHEN:  No, Your Honor.  We're convinced that Mr. Sanchez is competent, has been competent since we've been representing him.  Yes, we do intend -- it's not the direct answer to the Court's question, but we will most likely raise some of the mental health issues, particularly the brain injury, as part of mitigation at sentencing, but we do not believe that that interferes with his ability to understand the proceedings.

THE COURT:  And the facts that support the murder on November 29th, 2022, the parties have agreed that Sanchez grabbed the gun and then shot the victim twice, killing the victim deliberately and intentionally, acting with malice aforethought.  Did you receive discovery or other documents or items that would support that fact?

MR. COHEN:  Yes, Your Honor.

THE COURT:  And was there any question with regard to Mr. Sanchez's intent?

MR. COHEN:  No, Your Honor.  I think there were conversations about what his intent was.  We discussed that at length with not only our client, but also with the Government in reaching the resolution and the agreements that are in the Plea Agreement as to what we felt was a second-degree murder, rather than a first-degree murder, but we did not believe that there was any mental health defenses to the charges themselves.

THE COURT:  But specifically with regard to the discovery -- that is, the hotel security footage -- is there any question that, in fact, the murder was performed by Mr. Sanchez intentionally and not as a result of any self-defense?

MR. COHEN:  No.  We don't believe there's any question about that, Your Honor.

THE COURT:  All right.  Thank you, Mr. Cohen.

Mr. Sanchez, is Mr. Cohen accurate?  Have you had a

full discussion relating to the elements of each of these offenses, a full review of the discovery or the information that the Government provided in support of each of these elements, and a full discussion related to any possible defenses or motions to be filed?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you have any questions, Mr. Sanchez?

THE DEFENDANT:  No.

THE COURT:  Ms. Botero, if the Government will set forth an independent factual basis for each of Mr. Sanchez's pleas of guilty.

MS. BOTERO:  Yes, Your Honor.

As you have noted, there is a Stipulated Factual Proffer that has been signed by the parties, and at this time the Government will read it into the record.

"The United States of America and Jimmy Sanchez agree that the following facts are true, and had this case gone to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

"First, as background, this case began through a joint Drug Enforcement -- or DEA investigation with the Federal Bureau of Investigation, US Postal Inspection Service, and the Miami-Dade Sheriff's Office.  The investigation revealed that a drug-trafficking organization, or DTO, based in Mexico was

shipping parcels containing distribution quantities of methamphetamine from Mexico and California to South Florida.

"Tsvia Kol, the codefendant in this case, was a main point of contact for the DTO in South Florida.  Kol not only received some of these parcels herself, but also recruited JG, who we will refer to as the victim from here on, to receive a parcel of methamphetamine.

"A parcel intended for the victim was seized by law enforcement, as explained in more detail below.  After the parcel was seized by the police, Kol and Jimmy Sanchez, this Defendant, and other co-conspirators, attempted to ascertain if the victim stole the parcel or was informing on them to the police.

"November 12th through 28th, 2022, the initial investigation and lead-up to the murder.  The DEA investigation worked to identify parcels that were suspected to contain methamphetamine.  After identifying a target parcel, the DEA worked with a common carrier to intercept the package and, if possible, conduct a controlled delivery to the intended recipient.

"The parcel relevant to this case was shipped on November 11th, 2022 from California to Hialeah, Florida.  The next day, the DEA notified the Hialeah Police Department about the parcel.  The parcel's recipient was listed as JG, with an address at an apartment building in Hialeah, Florida.

"On November 16th, 2022, Hialeah PD took custody of the parcel.  A K-9 unit alerted to the presence of narcotics, which prompted the Hialeah Police Department to obtain a warrant to search the parcel.  The search revealed 11 Ziploc bags containing approximately 11 pounds of methamphetamine. The bags were wrapped in clear, green-colored plastic and concealed inside a Karaoke machine.  The street value of narcotics seized was estimated to be approximately $90,000.  A DEA laboratory analysis confirmed that the substance was, in fact, methamphetamine with a weight of 4,843.9 grams.

"Over the next several days, law enforcement attempted a controlled delivery of the parcel, and tried to meet with the victim to learn more information, but those efforts were not successful.  During this time period, Kol and other co-conspirators tried and failed to recover the parcel and pressured the victim to explain what happened.

"On November 26th, 2022, Kol was instructed to pay for and book flights and lodging for Sanchez and an associate to fly from California to Miami on November 28th, 2022.  Sanchez was directed to come to Miami on behalf of the DTO members in Mexico to determine what happened to the parcel of methamphetamine sent to the victim.  There's no evidence that Kol ever had contact with or knowledge of Sanchez or his associate before November 2022.

"The DTO members believed that the victim had stolen

the parcel, sold it, and kept the money for himself. Kol believed that the DTO members were going to hold her responsible for that missing parcel. When in Miami, Sanchez and his associate picked up a rental car. At this time, the victim was concerned for his safety. In fact, on November 28th, 2022, the victim posted his concerns for his safety on social media, though the victim -- and though the victim did not mention Sanchez, with whom he had no prior contact.

"November 29th, 2022, the day of the murder. On November 29th, 2022, Kol communicated with Sanchez and met him in person. When they met, Kol provided Sanchez a loaded firearm, and coordinated with him to meet later that evening at the Aladdin Hotel in Hialeah, Florida, the location of the murder. Kol arranged for the victim to be present that night for the meeting at the hotel.

"Kol arrived at the hotel at about eight p.m. and left her photo identification with the hotel front desk to reserve a room for a 12-hour period. The hotel security footage showed that Kol and Sanchez went up to the room for a brief period of time before both leaving the hotel.

"At about 10:30 p.m., Kol returned to the hotel with the victim -- they were both in Kol's vehicle -- and they entered the room that Kol had booked. And around that time, Kol placed a brief call to Sanchez. Sanchez arrived at the hotel about 45 minutes later, at approximately 11:15 p.m.

"During the 45-minute wait, Kol and the victim smoked methamphetamine.  The hotel security footage showed Sanchez entering the same room as Kol and the victim.

"At 11:23 p.m., the victim called 911.  On the call, the victim can be heard trying to provide his location, whispering:  'Aladdin.'  Then a physical struggle and gunshots can be heard.  In fact, at that time, Sanchez struck the victim and his head hit the wall.  The victim then fought back and the gun Kol provided to Sanchez fell out of Sanchez's pocket. Sanchez grabbed the gun and then shot the victim twice, killing the victim.  Sanchez killed the victim deliberately and intentionally, acting with malice and forethought.  A minute later, Kol and Sanchez were depicted on hotel security footage rushing from the room and leaving the hotel.

"Law enforcement responded to the scene, but they had no information about what room the 911 call came from or who was involved, so Kol and Sanchez were able to leave.

"The post-murder investigation.  The next morning, on November 30th, 2022, a manager with the hotel found the victim's body and called 911.  Investigators recovered the victim's phone, his car, which was in the parking lot across the street, and a pipe that had been used to smoke methamphetamine in the hotel room.

"An autopsy report was prepared that shows the victim sustained two gunshot wounds, one to the mouth and the other to

the top of the head.  The medical examiner classified the manner of death as homicide.

"The parties also agree that the total weight of narcotics attributable to the Defendant is 4,843.9 grams of methamphetamine."

THE COURT:  Actually, this Factual Proffer states: "Attributable to Kol."  Is it also --

MS. BOTERO:  It's attributable to both Defendants, Your Honor.  That's a typo.  If we could please make a correction and initial it.

THE COURT:  Yes.  If I can -- Orlando...

MS. BOTERO:  If I may approach.

THE COURT:  Yes.

And since that's a substantive change, if we can have that initialed by Mr. Sanchez, as well as counsel.

(Pause in proceedings.)

MS. BOTERO:  Your Honor, not to have six initials, the Government -- myself -- I was just going to sign on behalf of the Government.

THE COURT:  Yes.  We just need one counsel.  But I do need Mr. Sanchez's initials as well.

MS. BOTERO:  Of course.  Of course.  And my apologies for the scrivener's error, Your Honor.

THE COURT:  Mr. Sanchez, did you hear the statement of facts Ms. Botero presented to the Court?

THE DEFENDANT: Yes.

THE COURT: Are those facts true, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The Court has before it a Factual Proffer that consists of five total pages. Did you read it completely?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you understand every word?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did your attorneys answer all of your questions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are the facts contained on these five pages true, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The last page before the signatures has an amendment, and it states: "The parties also agree that the total weight of the narcotics attributable to Sanchez is 4,843.9 grams of methamphetamine."

Is that fact true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is that your initial reflecting the change, that that's attributable to you, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are each of these facts on each of the five pages true, sir?

27

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is this your signature on the fifth page, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm now referring to the Plea Agreement. Is there anything at all within this Plea Agreement that you do not understand or you would like me to explain to you?

THE DEFENDANT: I understand it all.

THE COURT: And is this your signature on the eighth page, Mr. Sanchez?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I see each counsel has signed each document. Mr. Dunham, are these your signatures on each document?

MR. DUNHAM: Yes, Your Honor.

THE COURT: Thank you, sir.

And Ms. Becker, your signatures as well?

MS. BECKER: Yes, Your Honor.

THE COURT: Thank you.

Mr. Cohen, your signatures?

MR. COHEN: Yes, Your Honor.

THE COURT: And on behalf of the United States, Ms. Botero, are these your signatures?

MS. BOTERO: Yes.

THE COURT: I also see that Ms. Massey has signed.

28

Are these your signatures?

And do you recognize this as Mr. Koffsky's signatures on each of the documents?

MS. BOTERO:  Yes.  Yes, we do.

THE COURT:  Thank you.

Mr. Cohen, do you believe that you received all of the discovery in this case?

MR. COHEN:  Yes.  The Government has been very forthcoming with us.  And anything that we felt was missing, and we requested, we later received.

THE COURT:  All right.  And are the facts on these five pages consistent with the true facts of the case?

MR. COHEN:  Yes, Your Honor.

THE COURT:  Would you agree that if the Government had presented each of these facts at the time of trial that they would set forth sufficient facts to sustain a prima facie case with regard to each of the counts alleged in the Indictment?

MR. COHEN:  Yes.  We would agree with that.

THE COURT:  Thank you, Mr. Cohen.

Mr. Sanchez, do you have any questions at all, sir?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  The Court has advised you of the maximum and minimum penalties by entering your pleas to these charges.  The Court has advised you of any immigration consequences.  We've had a discussion with regard to the

advisory sentencing guidelines.  The Court has also advised you of your constitutional rights that you're giving up by entering your pleas of guilty to each of these charges.  Do you have any questions at all, sir?

THE DEFENDANT:  No.

THE COURT:  It is the finding of the Court that in the case of the United States of America v. Jimmy Sanchez that the Defendant is fully competent and capable of entering his informed pleas of guilty, that Mr. Sanchez is aware of the nature of each charge and the consequence of each plea, and Mr. Sanchez's pleas of guilty are knowing and voluntary pleas that are each supported by an independent basis in fact that does contain each of the essential elements of the offense.

Mr. Sanchez, the Court does accept your pleas of guilty to Count 1, Conspiracy to Possess with the Intent to Distribute a Controlled Substance; Count 2, Discharge of a Firearm in Furtherance of a Drug-Trafficking Offense; and Count 3, Causing the Death of a Person in the Course of a Violation of 18, United States Code, Section 924, Subsection (c), and does adjudicate you guilty of each of these offenses.

The Court will defer sentencing in your case, sir, until Friday, April 3rd, 2026, at 9:30 a.m., in this courtroom.

Between now and then, Mr. Sanchez, you and your attorneys will be meeting with a Probation officer that will ask you questions in order to complete a Presentence

Investigation Report. I would ask that your answers are thorough, since I'll be relying upon your answers.

Following the completion of the report, you, as well as the Government, will have a full opportunity to review the report and file any objections to its accuracy.

At the time of the sentencing hearing, which, once again, is Friday, April 3rd, 2026, at 9:30 a.m., in this courtroom, if there are individuals that you would like to have present to support you or to speak on your behalf, please advise those individuals of the date and time of the hearing.

As well, Mr. Sanchez, I do invite you -- if there is anything that you would like to say at your sentencing hearing, I certainly invite you to speak at that time.

Do you have any questions at all, Mr. Sanchez?

THE DEFENDANT: No.

THE COURT: Mr. Cohen, is there anything further on behalf of Mr. Sanchez?

MR. COHEN: No. Thank you, Your Honor.

THE COURT: And, Ms. Botero, anything on behalf of the Government?

MS. BOTERO: Yes. I just want to make the Court aware that we notified the next-of-kin family for this hearing, and that they elected not to participate today. But we did let them know, just so that that's clear for the record.

THE COURT: All right. Well, the United States still

has a continuing obligation to notify the next of kin with regard to the sentencing hearing, the date and time, as well as advising with regard to any restitution that may be claimed by the next of kin or any other individual.

MS. BOTERO:  Yes, Your Honor.  We've already requested the information for the restitution, and we will notify them of the date.  Thank you very much.

THE COURT:  All right, then.

Have a pleasant afternoon.  We'll see you at that time.

COURTROOM DEPUTY:  All rise.

(Proceedings concluded at 10:08 a.m.)

32

UNITED STATES OF AMERICA        )

ss:

SOUTHERN DISTRICT OF FLORIDA  )

C E R T I F I C A T E

I, Yvette Hernandez, Certified Shorthand Reporter in and for the United States District Court for the Southern District of Florida, do hereby certify that I was present at, and reported in machine shorthand, the proceedings had the 31st day of January, 2026, in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that this transcript contains pages 1 - 32.

IN WITNESS WHEREOF, I have hereunto set my hand at Miami, Florida, this 5th day of March, 2026.


/s/Yvette Hernandez
Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
400 North Miami Avenue, 10-2
Miami, Florida 33128
(305) 523-5698
yvette_hernandez@flsd.uscourts.gov