UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-CR-20264-BLOOM

UNITED STATES OF AMERICA

vs.

TSVIA KOL,

      Defendant.

_____/

### GOVERNMENT'S RESPONSE TO DEFENDANT KOL'S OBJECTIONS TO THE DRAFT PRESENTENCE INVESTIGATION REPORT

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Response to Tsvia Kol's Objections to the Draft Pre-Sentence Investigation Report ("PSI"). [DE 102]. Tsvia Kol ("Kol") objects to several paragraphs in the PSI. The government's positions as to each objection are discussed in greater detail below.

**I.**      **Defense Objections to the Offense Conduct:**

      **A. Drug Quantity Calculation: Page 18, Paragraph 58, 60; Page 20, Paragraph 73; Page 21, Paragraph 79; Page 22, Paragraph 89, 93**

Kol objects to the drug quantity calculation of 4.8439 kilograms of methamphetamine (actual). Her argument is based on U.S.S.G. § 2D1.1(c), Note (B):

> The terms "PCP (actual)", "Amphetamine (actual)", and "Methamphetamine (actual)" refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater.

The laboratory report confirms that the substance is Methamphetamine Hydrochloride. It also reflects two weights, the net weight which is 4843.9 grams (4.843 kilograms) and the amount of pure substance which is 4747 grams (4.747 kilograms). The purity is 98%. The pure substance

calculation is the amount of methamphetamine (actual).

Kol argues that because there is a margin of error of +/- 6% on the purity, the court must use 92% as the purity level. But with this logic, it is also possible that the purity could be greater than 100% (98% + 6%).  However, the court does not even need to deal with the purity analysis as all it needs to do is look at the second line of the Note (B), "in the case of a mixture or substance containing…methamphetamine, use the offense level determined by the <u>entire weight of the mixture or substance</u>, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), **whichever is greater**." *Id*. (emphasis added). As the greater weight is the net weight, 4843 grams, that is the weight used to determine drug quantity calculations under U.S.S.G. § 2D1.1(c).  The PSI is correct. The base offense level is 38. This portion of the objection should be overruled.

**B.   <u>Multiple Counts Calculation</u>: Page 20-22, Paragraphs 71-93**

The Defendant objects to the multiple counts calculation and argues that the counts should be grouped. It should also be noted that the co-defendant in this case, Jimmy Sanchez ("Sanchez"), also objected to this calculation. After discussing this objection with probation, the government and probation agree that it is possible to group the counts of conviction. The final PSI for Sanchez now reflects grouping of the counts. Kol's PSI should reflect this as well. This objection should be sustained.

**C.   <u>Use of Violence Enhancement</u>: Page 21-22, Paragraphs 75, 79, 87-89, 93**

The Defendant objects to the two-level enhancement for use of violence or threats of violence applied under U.S.S.G. § 2D1.1(b)(2).  The Defendant argues three points in support of her objection. In her first argument, Kol says that the plain language of the enhancement shows it is defendant specific and this enhancement cannot be levied against her. This argument fails. The

Sentencing Guidelines allow for the application of an enhancement based on the actions of a defendant's co-conspirators if those acts are reasonably foreseeable and within the scope of jointly-undertaken criminal activity, but only "in the absence of more explicit instructions in the context of a specific guideline[.]" U.S.S.G. § 1B1.3, cmt. background. The language of the use-of-violence enhancement does have explicit instructions by stating that "the defendant used violence, made a credible threat to use violence, or directed the use of violence[.]" U.S.S.G. § 2D1.1(b)(2) (emphasis added).

The Eleventh Circuit addressed this issue in *United States v. Graham*, 123 F.4th 1197 (11th Cir. 2024). The court held that based on the language of § 2D1.1(b)(2), they were required to look at the defendant's own conduct. The facts of that case showed that the defendant was known as "the weed man" and that he was involved in resale of the drugs after the robbers delivered the marijuana. *Id*. at 1291. The Court found that his role as a seller of stolen narcotics alone did not support the enhancement because the use-of-violence by others was not a reasonably foreseeable consequence of defendant's own acts. *Id. See also United States v. Hernandez-Barajas*, 71 F.4th 1104, 1107–08 (8th Cir. 2023) (holding that directing the use of violence requires that the violence be a "reasonably foreseeable" consequence of the defendant's affirmative acts, and compiling cases to that effect).

As a preliminary matter, Kol herself made a credible threat to use violence, this, the enhancement is applied to her as defendant specific. While we do not have a text message that directly threatened the victim's life, it is clear from the communications we do have that that the victim was scared for his own safety. *See* PSI at ¶¶ 28-29. The victim was so scared of Kol that he posted on social media that if anything happened to him, it was Kol's fault and he included a picture of her. *See* PSI at ¶ 23. Further, unlike *Graham*, the evidence here is sufficient to sustain the use-

3

of-violence enhancement because the violence used by others was absolutely reasonably foreseeable consequence of Kol's own acts. The facts of the instant case are much different than those in *Graham*. In this case, Kol knew that the drug trafficking organization ("DTO") wanted the victim to answer for the lost package of methamphetamine, Kol knew that the DTO sent Sanchez to Miami to get an answer about the package form the victim, Kol said she was scared for her own safety if she was to be held responsible for the lost parcel (meaning she knew that the DTO was violent), she lured the victim to the hotel, she provided a gun to Sanchez, and she admitted in her factual proffer that willfully acted with callous and wanton disregard for human life. For both the threat of violence that Kol used, as well as the reasonably foreseeable violence Sanchez used, the use-of-violence enhancement is appropriate.

In her second argument against this enhancement, Kol says that there is an unwarranted sentencing disparity because her co-defendant did not get it. This argument fails as the final PSI for co-defendant Sanchez includes this enhancement. In her third argument against this enhancement, Kol argues that the inclusion of this enhancement results in impermissible counting. This argument also fails because now that probation and the government agree that the counts should be grouped, there is not a separate offense level calculation for Count 3. By adjusting from multiple counts to grouping, there can be no argument for double counting. Thus, the enhancement under § 2D1.1(b)(2) is appropriate, and this objection should be overruled.

### D. <u>Total Offense Level and Guideline Range</u>: **Page 22, Paragraph 93; Page 39, Paragraph 165**

Based on the government's positions on Kol's objections, the guideline calculation should be as follows:

| | |
|---|---|
| Base Offense Level: | 38 |
| Possession of Dangerous Weapon (§ 2D1.1(b)(1)) | +2 |
| Use of Violence, Credible Threats of Violence, or Directed Use of Violence (§ 2D1.1(b)(2)) | +2 |
| Adjusted Offense Level | 42 |
| Acceptance of Responsibility | -3 |
| Total Offense Level | 39 |

With an offense level of 39, criminal history category of II, the guideline range would be 292-265 months imprisonment. The court can order this sentence be served consecutively or concurrently to the 108-month sentence imposed on Kol in case 22-CR-60242-AHS.

### E.  Applicable Fine: Page 40, Paragraph 172

Based on a total offense level of 39, the fine in paragraph 172 is correct.  This objection should be overruled.

### II.      Defense Objections that have No Impact on the Guidelines

### A.  Aliases: Page 3

Kol objects to the aliases listed on page 3 of the PSI.  The government defers to probation on the source and inclusion of these aliases.

### B.  BOP Infractions: Page 5, Paragraph 9

Kol asks probation to include more detail regarding the circumstances of her BOP infractions.  The government does not have any information related to these events. Thus, the government defers to probation on this objection.

### C.  Member of Drug Trafficking Organization: Page 5, Paragraph 11

Kol objects to the PSI characterizing her as a member of a drug trafficking organization. However, the facts in this case reflect that she clearly is part of a drug trafficking organization. She received, and enlisted others to receive, methamphetamine parcels from drug traffickers based in Mexico. She participated in this conduct over many months, as evidenced not only by the

conduct in the instant case, but also the conduct of her previous drug trafficking conviction where she was involved with the same sources of supply in Mexico. This objection should be overruled.

### D.  Statement of Kol: Page 6, Paragraph 12

Kol objects to the PSI using her statement from her previous case, 22-60242-CR-AHS, as part of the offense in this case. While the statement is from her previous case, the explanation of her conduct is relevant to understanding her role and actions in the instant case. It is relevant and instructive to the Court. This objection should be overruled.

### E.  Exchange of Firearm: Page 12, Paragraphs 30, 32

Kol objects to these paragraphs that reflect where the firearm was exchanged between Kol and Sanchez. She argues that the exchange of the firearm did not occur at the hotel. But earlier in the day at Hallandale Beach. Kol is correct. This objection should be sustained.

### F.  Prior Relationship: Page 15, Paragraph 45

Kol objects to statement that she was in a prior relationship with Carlos Alonso Nunez-Sanchez. This is incorrect. Kol was not in a prior romantic relationship with Wilfredo Nunez-Gallardo. This objection should be sustained.

### G.  Use of "Rough Up": Page 16, Paragraphs 50

Kol objects to the inclusion of a statement attributed to her that she thought Sanchez was going to rough up the victim at the hotel. In reviewing the DEA report of Kol's voluntary statement, that statement is not documented. While it is possible that Kol made this statement during the interview, as the undersigned was not present and it is not in the report, there is no evidence to support it. Therefore, this statement can be removed from the paragraph and the objection should be sustained.

### H.   Use of "Execution Style": Page 17, Paragraph 53

Kol objects to the inclusion of the term execution style in this paragraph. This statement is used by the medical examiner to describe the shooting. The PSI paragraph further explains that the shooting was in close proximity. Since the evidence gathered in this case reflects that the shooting was not execution style, but was in close proximity the government does not object to removing the words execution style from this paragraph. The objection should be sustained.

### I.   Contact with Nunez-Sanchez after murder: Page 17, Paragraph 54

Kol objects to the fact that she spoke to the source of supply in Mexico after the murder. In a few places, the paragraph should be amended from "guy in Mexico" to Carlos Nunez-Sanchez. Additionally, the line "[s]he claimed that she did not speak to the guy in Mexico" should also be deleted as that is not in the DEA report of her interview. The objection should be sustained.

### J.   Typo: Page 18, Paragraph 56

Kol notes a typo in the year in this paragraph. Kol is correct it should be 2024. This objection should be sustained.

### K.   Murder Participation: Page 18, Paragraph 60; Page 19, Paragraph 61

Kol objects to the characterization she participated in the murder. Kol absolutely participated in the murder. When the victim did not have her methamphetamine package, she told him he was going to have to answer for himself. She coordinated for Sanchez to fly in from California. She gave Sanchez a loaded gun. She lured the victim to the hotel. In the signed stipulated factual proffer and plea agreement in this case, she admitted she was guilty of murder, specifically that she willfully acted with callous and wanton disregard for human life. This objection should be overruled.

**L.  <u>Family Information</u>: Page 30, Paragraph 108**

Kol objects to the information in this paragraph regarding her family.  The government does not have any information about her family. Thus, the government defers to probation.

**M. <u>Location of Incident</u>: Page 30, Paragraph 109**

Kol objects to the information in this paragraph regarding the location of a trauma incident. The government does not have any information about this incident. Thus, the government defers to probation.

**N.  <u>Fahr Syndrome Treatment</u>: Page 32, Paragraph 117**

Kol objects to the characterization that she does not need ongoing or intensive treatment for her diagnosis of Fahr Syndrome. As Kol reports in her objection, she currently takes high dose Vitamin D to attempt to target abnormal calcium deposits in certain parts of her brain. She does not indicate how long she is required to take the Vitamin D. Even if she was required to take Vitamin D every day for the rest of her life, at most that would be considered ongoing medication, but not medical treatment. Based on the information Kol has provided in support of her objection, there is no evidence of ongoing or intensive medical treatment. This objection should be overruled.

**O. <u>Medication</u>: Page 32, Paragraph 124; Page 33, Paragraph 130**

Kol objects to dosage amount listed for her Venlafaxine prescription.  The government does not have access to her medications list, thus, the government defers to probation.

**P.  <u>PREA Assessment</u>: Page 33, Paragraph 131**

Kol objects to the information in this paragraph without providing the context that she includes in her objection. The government defers to probation based on their review of BOP records and reports.

**III.     Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court overrule

or sustain Kol's PSI objections as reflected in each section above.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   /s/Monique Botero
MONIQUE BOTERO
Assistant United States Attorney
Fla. Bar No.722286
U.S. Attorney's Office - SDFL
99 N.E. 4th Street,
Miami, FL 33132-2111
Telephone: (305) 961-9010
Email: Monique.Botero@usdoj.gov

9