UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20264-CR-BLOOM

UNITED STATES of AMERICA,

    Plaintiff,

    v.

TSVIA KOL,

    Defendant.

_____ /

### NOTICE:  OBJECTIONS TO THE PRESENTENCE REPORT

COMES NOW, *Tsvia Kol*, through counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and this Court's Order on Sentencing Procedures [ECF:92], and files this Notice indicating which of the Defendant's objections to the Presentence Report ("PSR") remain unresolved and the objections which have been resolved, and states the following:

I.    Objections that Impact the Guidelines.

Drug Purity and the Offense Level.

This objection remains unresolved. Page 18: ¶58, ¶60; Page 20: ¶73, Page 21: ¶79, Page 22: ¶89, ¶93. Ms. Kol objects to: (1) the purity calculation of 98% for the methamphetamine seized, (2) a drug quantity of 4,843.9 grams of methamphetamine (actual), and (3) a resulting base offense level of 38. This is because the DEA laboratory report reflects a purity range rather than a single percentage. The lab report indicates the methamphetamine purity not as 98%,

but as 98% +/- 6%. This means that the purity of the methamphetamine seized in this case may be as low as 92% or as high as 100%.

The purity of methamphetamine directly impacts the drug quantity and base offense level under the guidelines. *See* USSG § 2D1.1(c), Note (B) to Drug Quantity Table ("The terms 'PCP (actual)'…and 'Methamphetamine (actual)' refer to the weight of the controlled substance itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual)"). Taking the net weight of 4,843.9 grams, a 92% purity would amount to 4,456 grams of methamphetamine (actual) and a base offense level of 36.

Because the purity of the methamphetamine remains uncertain, the Court should adopt the low end of the purity range (92%), or decline to calculate actual drug weight altogether.

Grouping.

Page 20-22: ¶71-93. This objection has been resolved.

Use of Violence.

This objection remains unresolved. Page 21-22: ¶75, ¶79, ¶87-89, ¶93. The Defendant objects to the 2-level enhancement for the use of violence applied under § 2D1.1(b)(2), and asserts that the plain language of the enhancement does not apply to Ms. Kol. U.S.S.G. § 2D1.1(b)(2) states: "if the defendant used violence, made a credible threat to use violence, or directed the use of violence,

2

increase by 2 levels. The language of the adjustment is defendant specific, not offense specific.

The Government's position is that the 2-level increase for the use of violence is warranted for two reasons: (1) Kol made credible threats to Gonzalez that caused him to fear for his safety, and (2) because violence was a reasonably foreseeable consequence of her conduct. The objection should be sustained.

As an initial matter, Kol has accepted responsibility for her conduct in this case and stipulated to that conduct in her factual proffer. She came forward prior to the indictment and provided the Government with critical information that filled significant evidentiary gaps in the investigation which allowed the Government to proceed with a case against her. Instead of offering Kol a benefit for that cooperation, the Government has decided to use her statements against her to enhance her sentence.

As to the Government's first argument, they admittedly have a lack of evidence to prove that Kol actually used violence, made a credible threat to use violence, or directed the use of violence. In support, the Government relies on their interpretation of a social media post made by Mr. Gonzalez suggesting that if something happened to him, it was Kol's fault and included a photo of the Defendant. Why, or what caused Mr. Gonzalez to make that post remains unclear. It is equally unclear whether the post was made as a direct result of anything done by Tsvia. No evidence has been presented that the post was because of violence used by the Defendant, was the direct result of a credible

threat made by the Defendant, nor that the post was made because violence was directed towards the victim by the Defendant. As the Government points out, Tsvia herself was concerned for her own safety under these circumstances but did not at any time use violence against the victim or threaten him. The defense believes that communications between the Defendant and Mr. Gonzalez on the day of the incident support that this enhancement is unwarranted.

The Government next argues that because Tsvia provided the gun to Sanchez, it was reasonably foreseeable that violence would be used against the victim by Sanchez. It cannot be ignored that the evidence used by the Government to support this enhancement comes solely from the statements made by the Defendant during her April 11, 2024 debriefing. Without Kol's cooperation, this critical piece of evidence which established federal jurisdiction to prosecute her would have remained unknown to the Government. There is no other evidence to support this enhancement.

That said, when deciding whether this enhancement is warranted, it is important to note the circumstances surrounding Kol providing Sanchez the firearm. Importantly, it was not done as part of plan to kill or harm the victim. The exchange of the weapon was done at the direction of a third party (Carlos Nunez Sanchez), the son of Wilfredo Nunez Gallardo. Wilfredo is a man 20-years the Defendant's senior whom she had a volatile relationship with. The gun was provided to Sanchez earlier in the day in Hallandale, in advance of the meeting at the Aladdin Hotel. Like other actions taken by the Defendant in this case, the

4

act of providing the weapon was completed because she was told to do so by a third party, not as part of any anticipated violent act. The defense maintains that Kol herself did not use violence, make a credible threat to use violence, or direct that violence be used against Gonzalez, and the 2-level adjustment does not apply.

Total Offense Level and Fine Amount.

This objection remains unresolved. Page 22: ¶93, Page 39: ¶165.  Ms. Kol maintains that her total offense level is 35, and her criminal history category is II. This results in a recommended guideline range of 188-235 months.[1]

| Base Offense Level: | 36 |
|---|---|
| Specific Offense Characteristic: Dangerous Weapon Possessed | +2 |
| Adjusted Offense Level: | 38 |
| Acceptance of Responsibility: | -3 |
| Total Offense Level: | 35 |

Page 40: ¶172:  Ms. Kol believes that based on the total offense level, paragraph 172 should indicate the guideline fine range is $40,000 to $10,000,000. This objection remains unresolved.

II.    Objections that have No Impact on the Guidelines.

Page 3: Aliases.

---

[1] Notably, under U.S.S.G. § 5G1.2(d) the Court has discretion to impose the sentence in this case concurrent with the undischarged term of imprisonment in Docket No. 22-Cr-60242-Singhal.

This objection remains unresolved. Ms. Kol's true name is Tsvia T. Kol. She has used the nickname Sapir, but has never used an alias or the other name mentioned in this paragraph.

Page 5: ¶9: Supplemental information for Infractions. This objection has been resolved.

Page 5: ¶11: Ms. Kol objects to being characterized as a member of the Drug Trafficking Organization. This objection remains unresolved.

Page 6: ¶12: The supplemental information was provided to clarify that the offense conduct stated was taken from the Defendant's first case in Docket No. 22-Cr-60242-Singhal. The Government's response is that the offense conduct is relevant to understanding her role and actions taken in the instant case and is instructive to the Court. This objection is unresolved.

Page 12: ¶30 ¶32: Ms. Kol pointed out that the exchange of the firearm occurred when meeting with Sanchez in Hallandale Beach earlier in the day, not at the Aladdin Hotel as indicated by Probation in paragraph 32. This objection has been resolved.

Page 15: ¶45: Ms. Kol was not in a prior relationship with Carlos Alonso-Nunez-Sanchez. This objection remains unresolved.

Page 16: ¶50: Ms. Kol objects to Probation's statement that Kol thought Sanchez's purpose was to "rough up" Gonzalez. Kol never said this. There was

no plan to kill or harm Mr. Gonzalez and Ms. Kol did not believe Sanchez was going to use the weapon to harm Gonzalez. This objection has been resolved.

Page 17: ¶53: Although Sanchez was near Gonzalez in the small room at the Aladdin Hotel, the shooting was not "execution style." The men were in close proximity when the shots were fired as they had been engaged in an altercation just moments before. However, the shooting by Sanchez was not execution style. This objection has been resolved.

Page 17: ¶54: Ms. Kol acknowledges that she spoke with Sanchez after the shooting and told him that "he shouldn't have done that." However, Kol believes Probation has conflated her conversations with Carlos Nunez-Sanchez, with another person in Mexico. This objection has been resolved.

Page 18: ¶56: There is a typo in the year. It should be July 10, 2024. This objection has been resolved.

Page 18: ¶60, Page 19 ¶61: The Defendant has stipulated in her factual proffer that she willfully acted with callous and wanton disregard for human life which qualifies for the use of the guideline for second degree murder under U.S.S.G. § 2A1.2. There was no plan to harm or murder Gonzalez. This objection is unresolved.

Page 30: ¶108: The Defendant's maternal sister Eden Yepes was born in New York. Her maternal brother Ravid Yepes was born in Isreal. Probation also states: "The family then relocated to Davie, Florida, for a few months, then went to St. Clairsville, Ohio for one year. Ms. Kol relocated to St. Clairsville on her

own, without her immediate family, to live with her step sister, Sivan Ben Hamo. This objection has been resolved.

Page 30: ¶109: Ms. Kol met Theophilus Blackston in Ohio. The incident of trauma described in this paragraph occurred in Orlando, Florida. This objection has been resolved.

Page 32: ¶117: Probation states that Ms. Kol reported not requiring ongoing or intensive medical treatment for her Fahr Syndrome. This is incorrect. Tsvia suffers from a rare, degenerative neurological disorder for which there is no cure. She is currently prescribed high-dosage Vitamin D in an attempt to target abnormal calcium deposits in certain parts of her brain. Follow-up examination is necessary to determine the effectiveness of this treatment and additional, ongoing care is required to monitor her condition as it progresses. The Government's position is that the Defendant's neurological disorder requires medication not medical treatment. This objection is unresolved.

Page 32: ¶124, Page 33: ¶130: Ms. Kol is prescribed 225mg of Venlafaxine, not 75mg. This objection is resolved.

Page 33: ¶131: The February 3, 2026, sexual victimization assessment and psychosocial assessment were provided to Ms. Kol and other female inmates in her unit as part of a PREA claim made by another inmate in the unit. While Kol answered questions in the assessments, she did not seek additional forms of treatment as the claim did not involve her, nor was she effected by the claim made by the other inmate. This objection is resolved.

8

**BENJAMIN, AARONSON, EDINGER
& PATANZO, PA**

*s/; Peter T. Patanzo*
Fla. Bar No. 174645
1700 East Las Olas Blvd, #202
Fort Lauderdale, Florida 33301
Tel:   (954) 779-1700
ppatanzo@benjaminaaronson.com
Counsel for Tsvia Kol

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

uploaded and filed on CM/ECF on this 7th day of April, 2026, and served on all

those associated with the electronic service list on this same day.

*s/; Peter T. Patanzo*
PETER T. PATANZO, ESQ.

9